FILED
2022 JAN 6 PM 12:32
CLERK
U.S. DISTRICT COURT

ANDREA T. MARTINEZ, United States Attorney (#9313)
AARON B. CLARK, Assistant United States Attorney (#15404)
Attorneys for the United States of America
111 South Main Street, Ste. 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

Case: 2:22−cr−00002
Assigned To : Nielson, Howard C., Jr
Assign. Date : 1/6/2022
Description: USA v Wolfgramm

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>JAMES WOLFGRAMM aka SEMISI NIU,<br><br>　　　　　Defendant. | **FELONY INFORMATION**<br><br>Violation:<br><br>Counts 1-4 : 18 U.S.C. § 1343 (Wire Fraud) |

The United States Attorney charges:

At all times relevant to this Information:

### BACKGROUND

1. The defendant JAMES WOLFGRAMM, also known as (aka) SEMISI NIU (WOLFGRAMM), was a resident of Spanish Fork, Utah, in Utah County, Utah.

### Counts 1-4
### Wire Fraud
### (18 U.S.C. § 1343)

2. On or about the dates listed in the chart below, within the of the District of Utah, and elsewhere,

JAMES WOLFGRAMM aka SEMISI NIU

the defendant herein, knowingly devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as described below:

### THE SCHEME AND ARTIFICE TO DEFRAUD

3. The scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises (hereinafter, the scheme and artifice) knowingly devised by WOLFGRAMM at the times and in the manner described herein, consisted of the execution of several schemes, as alleged below, against individuals involving -

   a. WOLFGRAMM'S solicitation and inducement to receive funds from depositors based on false and misleading promises; and

   b. WOLFGRAMM'S misapplication and diversion of depositor funds for undisclosed purposes, including to pay unrelated business and legal expenses.

It was part of the scheme and artifice that:

### BITEX MINING AND SALES TAX FRAUD

4. Beginning in or about May 2018, WOLFGRAMM owned and operated Bitex, LLC (Bitex) – a Utah company purportedly engaged in selling and hosting cryptocurrency mining machinery. Bitex maintained business offices in Orem, Utah.

//

//

*Bitex Mining Fraud*

5.     One Bitex customer, J.C., contracted to purchase three "Bitex Block Buster" mining machines for a total purchase price of $674,998.16 ($631,725 equipment price, plus $43,273.16 in sales taxes). WOLFGRAMM personally assured J.C. that J.C. had purchased the high-end "Bitex Block Buster" machines, as opposed to other lower-cost mining machine options that Bitex also offered for sale. J.C. thereafter requested WOLFGRAMM provide him the "Bitex Block Buster" machinery. Instead, WOLFGRAMM forwarded lower-cost machines to J.C. and never produced the "Bitex Block Buster" machines for J.C.

*Sales Tax Fraud*

6.     As part of each sales contract entered into by Bitex, and for which Bitex received funds from purchasers, Bitex collected sales taxes on the sales price of the machinery at the rate of 6.85%, which was the sales tax rate in Orem, Utah.

7.     Despite collecting sales tax proceeds on each of its sales, Bitex never paid any sales tax remittances to the State of Utah. Instead, Wolfgramm caused Bitex to retain the funds.

**CRYPTOCURRENCY SALES AND TRADING PLATFORM FRAUD**

8.     Beginning in or about May 2019, WOLFGRAMM received $306,000 from P.S.K. for the purpose of purchasing Bitcoin for P.S.K. WOLFGRAMM forwarded the funds from P.S.K. to a separate entity, purportedly to purchase the Bitcoin. Of the $306,000, $6,000 was paid as commission to WOLFGRAMM and $300,000 went to

purchase Bitcoin. WOLFGRAMM confirmed the May 14, 2019, purchase of Bitcoin for P.S.K. at a price of $7,512 per Bitcoin (39.94 Bitcoin).

9. WOLFGRAMM represented to P.S.K. that WOLFGRAMM could make a return on the Bitcoin for P.S.K – if P.S.K. would allow WOLFGRAMM to keep the Bitcoin in a cryptocurrency trading platform to which WOLFGRAMM had access. On May 14, 2019, WOLFGRAMM sent P.S.K. a text message indicating the trading arrangement carried "no risk or liability." On May 20, 2019, just six days after the purported purchase of Bitcoin for P.S.K., WOLFGRAMM sent P.S.K. a text message indicating P.S.K.'s Bitcoin balance had increased 3.2 Bitcoin through the trading platform (a return of 8%).

10. Ultimately, P.S.K. asked for the Bitcoin, but WOLFGRAMM was unable to provide it to P.S.K. WOLFGRAMM further failed to provide any documentation that he had actually used P.S.K.'s funds to purchase Bitcoin as promised.

## OHANA CAPITAL FINANCIAL FRAUD

11. Beginning in or about November 2019, WOLFGRAMM formed and controlled an entity by the name of Ohana Capital Financial (OCF). Based upon representations made on two websites maintained by WOLFGRAMM and OCF – www.ohanacapitalfinancial.com and www.ohanabanking.com – OCF purports to be "a private company that invests in various opportunities, and provides targeted financial, management, and strategic guidance towards those investments. The primary investment methods are by entering into a joint venture agreement or us becoming a lender on a specific project. Ohana Capital Financial does not solicit monies from the public to invest."

12. In addition to offering loans, OCF accepted deposits from customers who were seeking to use services offered by OCF, including wire transfer services. In the case of OCF customer M.K., who sent a large deposit to OCF, OCF provided an online portal for M.K. to confirm amounts held on deposit with OCF for M.K.'s benefit. The portal listed M.K.'s account as a "checking" account.

13. OCF boasted its motto was "Banking the unbankable" and purported to offer full financial services to those entities that were not eligible for traditional bank accounts. Providing both legitimate depositor and lender services to individuals and entities in the State of Utah required that OCF be registered as a financial institution with the Utah Department of Financial Institutions (UDFI). Among other things, the registration as a financial institution ensures proper capitalization of the company and puts measures in place to protect and preserve depositor funds. These measures include audits and reviews by the UDFI.

14. OCF was registered as a private lender with the UDFI but was never registered as a full financial institution.

15. Even so, OCF received money on deposit from customers with the understanding that an entity's money would be kept on deposit until such time as the customer authorized OCF to release the money (according to the customer's directives). Upon OCF's receipt of deposits from several customers, WOLFGRAMM, without the customers' authorization, directed that these funds be used for unrelated business expenses.

16. For instance, on or about September 19, 2020, OCF customer M.K. transferred $4,950,000 to an OCF account at Mountain America Credit Union. M.K. had

advised WOLFGRAMM and others at OCF that the deposited funds were to be used for an anticipated transaction by M.K.'s company with a manufacturer of Personal Protective Equipment (PPE) in China. But instead of keeping M.K.'s funds on deposit and ready for transfer at the time designated by M.K., WOLFGRAMM, from October 1, 2020, through October 13, 2020, directed that $4,090,435 of M.K.'s funds be paid to two separate, unrelated entities for purposes of settling legal actions against WOLFGRAMM and OCF.

17. Further, on or about November 5, 2020, OCF customer Viral Films Media (VFM) transferred $1,001,000 to an OCF account at Mountain America Credit Union. VFM had intended to apply the funds towards a film project for which they were attempting to obtain funding. Instead of keeping VFM's funds on deposit and ready for transfer at the time designated by VFM, WOLFGRAMM, on November 6, 2020, directed $1,000,000 of VFM's funds be paid to a Chinese manufacturer of PPE – as part of a transfer requested by OCF customer M.K.

### THE USE OF WIRE COMMUNICATIONS FOR THE PURPOSE OF EXECUTING THE SCHEME AND ARTIFICE TO DEFRAUD

18. For the purpose of executing the scheme and artifice to defraud described herein, and attempting to do so, on or about the dates listed in the chart below, WOLFGRAMM transmitted and caused to be transmitted by means of wire communications in interstate commerce writings, signs, signals, and sounds, including but not limited to the following instances set forth in the chart below, and with each instance set forth being a separate Count:

| Count | Date | Description of Use of Interstate Wire Communication | Related Scheme |
|---|---|---|---|
| 1 | 12/21/2018 | Wire Transfer of $229,135.66 from J.C. at Bellco Credit Union (Colorado) to Bitex, LLC, account ending in x9794 at US Bank (Utah). | Bitex Mining and Sales Tax Fraud |
| 2 | 5/13/2019 | Check deposit of $306,000 from Law Offices of P.S.K. at Wells Fargo Bank (Nevada) to Bitex, LLC, account ending in x9794 at US Bank (Utah). Check was made payable to James Wolfgramm Niu. | Cryptocurrency Sales and Trading Platform Fraud |
| 3 | 9/17/2020 | Wire Transfer of $4,950,000 from M.B.K and I.K. at Bank of America (Florida) to Ohana Capital Financial Account ending in x6629 at Mountain America Credit Union (Utah) | Ohana Capital Financial Fraud |
| 4 | 11/5/2020 | Wire Transfer of $1,001,000 from Viral Films Media at JP Morgan Chase Bank (Georgia) to Ohana Capital Financial Account ending in x6629 at Mountain America Credit Union (Utah) | Ohana Capital Financial Fraud |

all in violation of 18 U.S.C. §1343.

## NOTICE OF INTENT TO SEEK FORFEITURE
18 U.S.C. § 981 (a)(1)(C) and 28 U.S.C. § 2461
(Criminal Forfeiture)

19. Pursuant to 18 U.S.C. § 981(a)(1)(D) and 28 U.S.C. § 2461(c), upon conviction of any offense in violation of 18 U.S.C. § 1343 (wire fraud), as set forth in this Information, the defendant shall forfeit to the United States of America all property, real or personal, that constitutes or is derived from proceeds traceable to the scheme to defraud. The property to be forfeited includes, but is not limited to, the following:

    a. A money judgment equal to the value of the proceeds the defendant obtained from the scheme to defraud.

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of any offense in violation of 18 U.S.C. § 1957(a), as set forth in this information, the defendant shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

- A money judgment equal to all property involved in the money laundering charge.

## SUBSTITUTE ASSETS

If any of the above-described forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)(1), to seek forfeiture of any other property of said defendant up to the value of the above-forfeitable property.

ANDREA T. MARTINEZ
UNITED STATES ATTORNEY

*s/Aaron B. Clark*_____
AARON B. CLARK
Assistant United State Attorney